# IN THE COURT OF APPEALS OF IOWA

No. 18-0544
Filed December 5, 2018

**IN THE INTEREST OF V.S. and A.S.,**
**Minor Children,**

**G.S., Mother,**
    Appellant,

**A.S., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Floyd County, Karen Kaufman Salic,

District Associate Judge.


A father and mother separately appeal the termination of their parental

rights. **AFFIRMED ON BOTH APPEALS.**


Mark A. Milder, Waverly, for appellant mother.

Danielle M. DeBower of Eggert, Erb, Kuehner & DeBower, P.L.C., Charles

City, for appellant father.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant

Attorney General, for appellee State.

Cynthia Schuknecht of Noah, Smith, Schuknecht & Sloter, P.L.C., Charles

City, for guardian ad litem for minor children.


Considered by Danilson, C.J., and Potterfield and Doyle, JJ.

**POTTERFIELD, Judge.**

A father and mother separately appeal termination of their parental rights to A.S., born in 2009, and V.S., born in 2013. The parents' rights were terminated pursuant to Iowa Code section 232.116(1)(f) (2017).[1] The father argues the State failed to prove the children could not be returned to his custody, the State did not make reasonable efforts toward reunification, and the district court erred in failing to dismiss the termination petition based on the misconduct of the witness for the Iowa Department of Human Services (DHS). The mother argues the State did not make reasonable efforts toward reunification, the children could have been returned to her custody at the time of the termination hearing, termination is not in the best interests of the children, and the district court should have dismissed the termination petition based on misconduct of the witness for DHS.

### I. Background Facts and Proceedings.

This family was first involved with DHS in June 2015 when the mother left the children in a car in a casino parking lot for a period of time. A resulting child-abuse investigation was founded for denial of critical care. DHS provided services for three months and identified no additional concerns.

In the present case, a year after the first involvement of DHS, the children were removed in June 2016 when the mother was arrested. The mother and the children had been living at a hotel for ten days. When confronted with her unpaid

---

[1] The district court stated it terminated the parents' rights to the children pursuant to Iowa Code section 232.116(1)(h) in the conclusion of its order but focused its analysis on section 232.116(1)(f). Both children were over the age of four at the time of the termination hearing, a fact the district court acknowledged in its order. The district court's reference to section 232.116(1)(h) must have been a typographical error and is harmless in our de novo review. *See In re A.N.*, No. 15-1028, 2015 WL 5578311, at *2 n.2 (Iowa Ct. App. Sept. 23, 2015).

hotel bill, the mother became angry and destructive, and the hotel called law enforcement. The mother was arrested on an outstanding warrant. The father was jailed in Minnesota at the time. The mother admitted to smoking methamphetamine in the hotel room bathroom while the children were in her care; methamphetamine was found in her vehicle. She also admitted to leaving the children at the hotel alone to visit a casino over two hours away. A.S. had not consistently participated in school and both children were behind on their vaccinations. The children were placed in foster care and, in July, were adjudicated as children in need of assistance (CINA). A dispositional hearing was held in August. A review hearing was held in January 2017. The parents did not attend.

In February, the parents were arrested for violating parole by continuing to use methamphetamine and failing to participate in substance-abuse treatment. The mother and father entered separate residential correctional facilities and began substance-abuse treatment. Both parents have a history of engaging in criminal activities. In 2015, the mother was convicted of two counts of felony theft, seven counts of misdemeanor theft, forgery, and a methamphetamine offense. The father has a felony drug conviction in Minnesota and a felony theft conviction in Iowa. The mother was arrested again in April 2017.

The parents were resistant to family safety, risk, and permanency (FSRP) services throughout the case. In the spring of 2017, the mother told the FSRP provider she would not meet with her for status sessions, provided for the purpose of discussing the case plan and parent goals, and would only attend visits with the children. The district court found that of the fifty scheduled visits during the first

eighteen months of the CINA case, the parents canceled or did not attend twenty-four visits, including many times when they did not want to schedule visits for a week or so at a time or did not contact the provider to schedule visits. The parents often failed to confirm visits, causing them to be canceled; confirmed visits but did not attend, causing the children anxiety and distrust over whether their parents would show up; or showed up over ten minutes late. DHS policies dictate that visits are cancelled when parents show up over ten minutes late. The parents declined to participate in family-preservation court or be matched with a parent partner.

A second review hearing was held in May. The district court extended the time period for permanency because both parents still resided in residential correctional facilities. In July, the parents apparently completed the residential portion of their treatment programs at the correctional facilities and began to have semi-supervised visits with the children. A plan was made to transition the children back to their parents' care. At that time, the parents were attending all visits, cooperating with FSRP providers, complying with the terms of their probation, and regularly submitting to drug testing.

During the first overnight weekend visit, the father's parents spent the weekend with the family. The parents had been informed that family and friends were not allowed at visits. A second permanency hearing was held soon after; neither parent attended. At that hearing, several other concerns were brought to light: V.S. had begun defecating in her pants when overnight visits started, the mother had not completed her obligations at her residential correctional facility, the parents had requested to cease visits for a period of time because of work

obligations, the court doubted the honesty of the parents' claimed employment, and the father had not engaged in ordered anger-management treatment. The court ordered DHS to file a termination of parental rights petition, and the petition was filed in September.

The mother tested positive for methamphetamine use in September. The father displayed physical signs of drug use during a FSRP meeting, becoming verbally aggressive toward providers and behaving erratically. Neither parent has submitted to drug testing since that time. The father did not complete his substance-abuse treatment program; the mother "substantially completed" her substance-abuse treatment program. Ongoing treatment for substance abuse was recommended for the father, but he has not reengaged.

The district court expressed concerns about the parents' claimed employment. Neither parent provided verification of employment. The father testified he works as an independent contractor for a limited liability corporation registered in his name. The district court found that "given their past life choices and behaviors, coupled with large amounts of cash, excessive unexplained travel and frequent unavailability to see the children, meet with providers or submit to drug testing, the obvious concern is that they are supporting themselves by selling drugs."

At the termination hearing, the DHS worker testified the children could not be returned because of ongoing concerns about substance abuse, accountability, and the ability to meet DHS expectations. While the parents both substantially completed substance-abuse treatment, the mother tested positive for methamphetamine after treatment, and the father was caught attempting to

circumvent drug testing. Neither parent has complied with DHS drug testing consistently. Both parents missed, cancelled, or were late to a significant portion of visits with their children, demonstrating a lack of accountability. The district court entered an order terminating the parental rights of both parents as to both children in March 2018.

Both parents timely appealed. The father filed a motion to remand, and the case was remanded to the district court to determine whether any false testimony was given by the DHS witness during the termination proceedings. The district court entered an order finding the testimony was not false, although some internal reports contained falsehoods. The court confirmed its previous termination order.

The mother and father separately appeal.

**II. Standard of Review.**

We review the juvenile court's decision to terminate parental rights de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "Grounds for termination must be proven by clear and convincing evidence." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). "Our primary concern is the best interests of the child[ren]." *Id.*

**III. Discussion.**

Both parents argue the State did not prove the grounds for termination because the children could have been returned to their care at the time of the termination hearing. Both parents argue the State did not make reasonable efforts to reunify the children with the parents. The mother argues termination is not in the children's best interests. Finally, both parents argue the district court should

have dismissed the termination petition based on the misconduct of the department's witness.

### *Iowa Code section 232.116(1)(f)*

Both the father and the mother argue the State did not prove by clear and convincing evidence the fourth element of section 232.116(1)(f). The parents contest whether the children could be returned at the time of the termination hearing. The parents' substance use was a primary concern throughout the case. The father argues he has never had a positive drug test and the mother's positive drug test was six months prior to the termination hearing. However, there still exist significant concerns with the parents' drug use. The father has not provided a positive drug test for the department, but he has also refused drug testing for the majority of the case. The father's substance-abuse evaluation initially recommended no further treatment, but when his providers later recommended treatment, the father declined to participate. The mother did reengage in treatment following her positive drug test. But, neither parent provided a drug test in the last five months of the case, despite multiple opportunities to do so. Our courts recognize an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children. *See, e.g.*, *In re J.K.*, 495 N.W.2d 108, 112–13 (Iowa 1993) (terminating parental rights where mother demonstrated unresolved drug dependency and declining to take her "word that she stayed away from drugs").

The parents have also not been able to comply with DHS expectations or prove they can provide stability for the children. The parents have consistently failed to attend FSRP and DHS meetings, visitation, drug testing, and hearings.

The State proved the children could not be returned to the care of the parents at the time of the termination hearing.

### *Reasonable Efforts*

Next, both the father and the mother argue the State did not make reasonable efforts at reunification. "Reasonable efforts to reunite the parent and child are required prior to termination." *In re T.C.*, 522 N.W.2d 106, 108 (Iowa Ct. App. 1994). "The Department has an obligation to make reasonable efforts toward reunification, but a parent has an equal obligation to demand other, different, or additional services prior to a permanency or termination hearing." *In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005). Parents must make such complaints to the juvenile court; a complaint to DHS is not sufficient. *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002).

Neither parent requested additional services at the January, May, or August 2017 permanency hearings. Both parents argue reasonable efforts were not made because an interpreter was not provided (the parents' first language is Russian), visits were not held at the parents' home, and the parents were not allowed to have unsupervised visits. The father argues the relatively quick change from a recommendation of a trial home visit to termination was unsupported and demonstrates a lack of reasonable efforts. The mother also focuses on the fact that the parents had progressed to an unsupervised weekend visit before DHS revoked unsupervised visits and changed its recommendation to termination.

The father argues DHS did not provide them with a needed interpreter. The parents moved to the United States from Russia in 2001, and both parents speak Russian as their primary language. However, the parents routinely declined the

opportunity to have an interpreter present at visits and meetings. The parents were offered and accepted interpreter services at the hearings they attended. The district court found the parents

> seem to have dealt appropriately without an interpreter at their various jobs, with the [residential care facility] staff, and with customers, retail personnel, substance abuse counselors and others. Most importantly, they continue, even at the termination hearing, to express a very clear understanding of what has been expected of them all along.

The parents argue visits should have been held in their home and there was no rational basis for denying the parents' requests for visits in the home. The parents lived over an hour from the foster-care placement. Because the parents were often late or failed to show up for meetings, the decision was made to hold visits in the community close to the children's placement. The decision helped prevent the children from traveling two hours round trip without seeing their parents.

The parents were provided: protective daycare; drug testing; couples-counseling referral; individual therapy referral; family-preservation-court referral; supervised, semi-supervised, and unsupervised visitations; relative home study; interpreter services; parent partner referral; FSRP services; substance-abuse treatment; mental-health treatment; family foster care; probation supervision; residential-correctional-facility placements; family team meetings; and case-management services. We find the State made reasonable efforts toward reunification. The parents were consistently offered and declined interpreting services, visits closer to the children's placement were in the children's best

interests, and the abrupt change from overnight visits to supervised visits was prompted by several documented concerns.

### Best Interests

Next, the mother argues terminating her parental rights is not in the children's best interests, particularly in light of the children's national heritage and culture. *See* Iowa Code § 232.116(2). Reports to the court reflect both parents have a strong relationship with the children. However, the parents inconsistently attended visits, causing the children to feel anxiety and distrust their parents. In determining whether termination is in the children's best interests, we must "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *Id.* The parents have been unable to prove that they have adequately addressed their substance-abuse issues or that they can reliably show up for their children over the past twenty-one months since the children have been removed. Our legislature has limited the period in which parents can demonstrate they are capable of parenting. *J.E.*, 723 N.W.2d at 800. "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). Permanency and stability are in the children's best interests.

### DHS Witness Misconduct

Finally, both parents argue the district court erred on remand in failing to dismiss the termination petition based on the misconduct of the department. The Iowa Supreme Court, in granting the motion for remand, directed the district court

to determine whether the DHS witness testified falsely and whether the petition for termination of parental rights should be dismissed. The parents argue the order terminating parental rights should be vacated under Iowa Rule of Civil Procedure 1.1012(2), which allows the court to vacate a judgement or grant a new trial if there was "[i]rregularity or fraud practiced in obtaining it."

Here, the DHS caseworker was found to have made false testimony in an unrelated case. Her supervisor reviewed this case and found four discrepancies in the department's internal notes, apparently all related to reports that the DHS worker had seen the parents or children when documentation did not verify that contact. The caseworker had also deleted the messages on her phone regarding this case.

The father argues there is no way to know whether reasonable efforts were made because the DHS worker who testified at the termination hearing was unreliable. The father argues the grounds for termination were not proven by clear and convincing evidence because there are substantial doubts as to the accuracy of the evidence presented by the DHS worker. The mother argues without the evidence presented by the DHS worker, there is insufficient evidence to support termination.

Our supreme court issued an order of limited remand. A hearing was held on the issues of whether false information was presented to the district court at the termination hearing and whether the termination petition should be dismissed. The district court determined that the false information the DHS worker had entered into DHS's internal system had not been presented to the district court at the termination hearing. The district court found that the DHS worker's testimony at

the termination hearing was able to be verified by an independent source and none of the factual statements she had made were disputed by any other evidence offered. The district court went on to address a number of other concerns the parents raised.

On our de novo review, we agree with the district court's conclusion that the DHS worker's testimony at the termination hearing is independently verified. We conclude the grounds for termination and the finding of reasonable efforts are corroborated by the record and do not depend solely on the testimony of the DHS worker.

We find the State proved the grounds for termination under Iowa Code section 232.116(1)(f) by clear and convincing evidence, DHS made reasonable efforts toward reunification, termination is in the children's best interests, and the district court correctly found it did not rely on false or fraudulent statements at the termination hearing. We affirm the district court's order terminating the parental rights of the mother and the father as to both children.

**AFFIRMED ON BOTH APPEALS.**